Thomson, J.,
delivered the opinion of the court.
This is a suit by Ella Kelley, administratrix of the estate of Edward S. Kelley, deceased, against The Union Pacific Railway Company, to recover damages sustained by the estate in consequence of injuries received by the deceased through the fault of the defendant. The complaint alleges the incorporation of the defendant, the management and operation by it of a line of railroad which is described, and then proceeds as follows:
“That theretofore the said defendant had entered into a contract with The Pacific Express Company, a corporation organized and existing under and by virtue of the laws of the State of Nebraska and lawfully doing business in the State of Colorado, for a valuable consideration to it paid by the said The Pacific Express Company, to transport its ex *327 press packages and express messengers over the line of defendant’s said railroad between the points aforesaid, and undertook, promised and agreed, in consideration of the premises aforesaid, to safely cany the express packages and the express messengers of the said The Pacific Express Company.
“That on, to wit, the lltli day of November, 1885, the deceased, the said Edward S. Kelley, was a route express messenger in the employ of the said The Pacific Express Company, and was then and there, while in the line and in the discharge of his duty as such express messenger, being carried over the said railroad, so managed and controlled by the said defendant, in a car attached to one of the defendant’s trains and set apart for the use of the said The Pacific Express Company, its messengers and employees. That at the date last aforesaid the defendant, not being.mindful of its said contract and agreement to safely carry the said Edward S. Kelley pursuant to the agreement aforesaid, carelessly and negligently stopped its train, to which the said ear, so set' apart for the use of the said Edward S. Kelley and the said The Pacific Express Company, was attached, upon a steep grade on the line of the defendant’s said road at or near the town of JBreckenridge in said county of Summit and State of Colorado, and detached the locomotive or locomotives therefrom, and did not properly set the brakes so as to securely fasten the said train, and removed all of the brakemen and employees from said train, without giving the said Edward S. Kelley any notice, information or warning as to what had been done, or any warning of the danger that he was in by reason of the careless management of said train, as aforesaid, and that while said train was so left unguarded, it, in some manner unknown to plaintiff, started down said steep grade and soon acquired a rapid velocity, and continued to run down the said grade for a distance of, to wit, four or five miles, when the same was thrown from the track, and the said Edward S. Kelley was, without any fault or negligence on his part, so greatly injured by the shock therefrom as to produce insanity, by reason of which he was adjudged insane *328 by proceedings duly instituted in the said county court of Arapahoe county, and by an inquisition, duly made, ordered by the said court to be confined in the State Lunatic Asylum at Pueblo, in said State of Colorado, at which place he died at the date aforesaid, but not from the injuries caused by the negligence for which this suit is brought.
“ That by reason of the injuries aforesaid, the said Edward S. Kelley became, and during' all of his lifetime thereafter remained, sick, sore, lame and disordered in mind and body, so as wholly to unfit him for following his usual occupation or from engaging in any business of any kind whatever and earning wages of any kind. In consequence of which, a loss and damage has occurred to the personal estate of the said deceased in the sum of one thousand nine hundred and sixty-four dollars ($1,964), and in the further sum of thirty-five dollars ($35.00), incurred by the said Edward S. Kelley in medical expenses in attempting to effect a cure of his said sickness resulting from the injuries aforesaid.
“ Wherefore, the plaintiff, as such administratrix, prays judgment against the defendant for the sum of one thousand nine hundred and ninety-nine dollars ($1,999), together with costs of this action.”
To this complaint a demurrer was filed, the grounds of which were that it did not show any right in Ella Kelley to bring and maintain the action, and because Ella Kelley had no right to bring or maintain the action. Tire demurrer was sustained, and judgment given for the defendant. The plaintiff took the case to the supreme court by writ of error, where the judgment was reversed, and the cause remanded. Kelley, Adm’x, v. U. P. R’y Co., 16 Colo. 455.
The defendant then answered, first, a denial; second, a former adjudication, in the United States circuit court for the district of Colorado, of the same cause of action, in a suit between William F. M. .Lyon, as conservator of Edward S. Kelley, who was then a lunatic, and this defendant; and, third, that the injury to deceased was caused by his own negligence, and the negligence of his co-employees in the same general line *329 of employment. Plaintiff replied, denying the second and third defenses. A trial resulted in a verdict and judgment for plaintiff of $1,999. The defendant brings the cause here by appeal.
A number of questions are presented by the record, some of them of considerable importance. The question raised by the demurrer to the complaint is no longer in the case. They are the identical complaint and the same demurrer which were before the supreme court, and the questions presented by these pleadings were the only ones decided. It was there held that the action having been brought upon a contract, survived to the plaintiff; and that the facts stated were sufficient in law. This adjudication is conclusive of any question concerning the sufficiency of the complaint. It is, however, contended that the cause of action in this case is res adjudicata. On the 21st day of February, 1888, William F. M. Lyon, as conservator of Edward $. Kelley, brought an action in the United States circuit court, for the district of Colorado, to recover for injuries received by Kelley through the negligence of the defendant, its agents and servants ; being the same injuries described in the complaint in this cause. The complaint in that case and in this, except as to the allegation of the contract for safe carriage, and its breach, are substantially the same. The answer there, as here, denied the complaint, and averred that 'the injury was caused by Kelley’s own negligence and that of his fellow servants in the same general line of employment. As in this case the affirmative defense was denied by the replication. Pending that suit Kelley died; and the plaintiff, having been appointed administratrix of his estate, made application to the court to continue the action in her name as such administratrix. The court denied the motion, and dismissed the suit without costs. The reason for this action of the court is not disclosed by the record of the case; but we are informed by the defendant, in its answer, that it was because the suit did not survive to the administratrix, and we assume that this is true. The action in the circuit court was for a tort. The complaint alleged *330 injuries to the person of the lunatic, suffered through the wrongful negligence of the defendant, and the damages claimed were solely on account of these injuries. It is clear that the action died with the plaintiff, and hence the refusal of the court to revive it in the name of the administratrix, and its judgment dismissing the cause.
The contention is that the judgment in that case is a bar to this action. Whether this is true or not, depends upon several conditions. In the first place the judgment is conclusive evidence only of the matter determined by it; and to enable the defendant to interpose that matter, to that extent, in this case, as res adjudioata, it must appear that the cause of action in both cases was the same; and that it was between the same parties, in the same right or capacity, or their privies claiming under them. Bigelow v. Winsor, 1 Gray, 299; Aspden v. Nixon, 4 How. 467; 2 Black on Judgments, 610; 1 Herman on Estop, and Res. Ad., secs. 115, 134, 135.
There was no trial in the former case. As to whether the matters alleged were true or not, or as to their sufficiency to authorize a recovery, there was no adjudication. The sole decision was that, by reason of the death of the plaintiff, the cause of action was extinguished. To this extent it may be said that the judgment is conclusive, but no farther. But counsel seem to think that this is an attempt to accomplish the same purpose which was' sought in the federal court, by simply changing the form of action. There is a class of cases in which a party may elect to sue in tort or in assumpsit, and by selecting one remedy he waives the other. This is true in case of the wrongful conversion of money or property; and the party entitled to it may, instead of bringing an action in trover, sue upon an implied promise to pay; and this the law will not permit the wrongdoer to deny. But in either form the subject-matter of the suit, and the cause of action, are precisely the same; so that one final adjudication determines the controversy forever. But an action for an injury to the person must be in tort. In the nature of the case there can be no implication of a promise to pay for the *331 wrong. If a plaintiff should attempt to bring an action in assumpsit for injuries done to his person, he would be compelled to allege, in effect, that he permitted the defendant to inflict the injuries upon him in consideration of the promise of the defendant to pay him a reasonable compensation for them. Mr. Cooley characterizes such a suggestion as an absurdity. Cooley on Torts, 2d ed., 107 et seq.
The action in the federal court was in tort for the injuries ; and the present action is for loss sustained by reason of the failure of the defendant in the performance of its implied contract to safely carry the deceased. The two causes of action are essentially different, and the measure of recovery in each is different. In one case, the jury, in estimating the damages, would be entitled to consider the nature of the injuries and the pain and suffering caused by them; while, in the other, the damages would be confined to the actual pecuniary loss occasioned by the resulting disability. This survives and that does not. This is therefore not a suit in another form upon the same cause of action which abated in the federal court; and a judgment there could be no bar here. If an adjudication were necessary to make it any more conclusive than the law makes it, the judgment of the federal court is conclusive that the action brought there could not be maintained in the name of plaintiff as administratrix ; while the judgment of the supreme court in this case is equally conclusive that this action can be maintained in her name; and for the reason that this plaintiff could not maintain that suit, it is evident that the right or capacity in which the two plaintiffs sued was not the same. The record of that case was inadmissible for any purpose, and was properly rejected.
Did the injuries received by the deceased result from the negligence of his co-employees in the same general line of employment ? The evidence is that he was in the employ oí The Pacific Express Company as messenger. The express cars were furnished by the defendant. By virtue of an agreement between it and the express companj^, he acted as *332 baggageman for the defendant; the railroad company furnishing the express company other service in exchange. He performed the baggage service under instructions from the express company; but his baggage duties were defined by the railroad company’s baggage department, and as baggage-man he was under its direction. He was in the sole employ of the express company; it paid him his wages; and it alone could discharge him either as messenger or baggage agent. If his baggage service was unsatisfactory to the railroad company, it could request his discharge; but the discharge came from the express company. Rule 92 of the defendant was read in evidence as follows: “ Agents in charge of the United States mails, express - messengers, sleeping-car conductors and porters, news agents, individuals in charge of private ears and persons in charge of stock while with the trains of the Union Pacific Railway, must consider themselves employees of the Union Pacific Railway Company in all matters connected with the movement and government of trains, and must conform to the directions of the conductor thereof.” The accident occurred on February 11, 1885. The train consisted of a number of loaded freight cars and one express car at the rear, of which the deceased was in charge. The train was at Breckeuridge, having come for some distance over a heavy ascending grade, with a heavy grade in front of it to the top of the mountain ; and it was too heavy to proceed entire. The conductor therefore divided the train, detaching a number of the rear cars, including the express and baggage ear, and set the brakes upon some of them. After they had been detached, the brakes for some reason became loose, the detached portion of the train broke away, and ran down the grade which it had ascended for a distance of about five miles, where it left the track and was wrecked, causing the injuries suffered by the deceased. There belonged to the train a brakeman, whose duty it was to remain with the rear end of the train, look after it, protect it from other trains, and prevent it from getting away and going down grade. When the train com-
*333 meneed to run away this brakeman was not at his post. The argument of counsel is that, under the facts in evidence, the deceased was a fellow servant with the employees of the defendant; and that, therefore, the injuries having been caused by the negligence of his co-employees, or some of them, no responsibility or liability could attach to the railroad company. Fellow servants are defined to be those who serve the same master, work under the same general control, derive authority and compensation from the same source, and are engaged in the same general business, though it may be in different grades or departments of it. Wonder v. B. B. Co., 32 Md. 411; Colter v. Board of JEducation, 4 Hun, 569; Abrahams v. Beynolds, 5 H. & N. 140 ; Foster v. Minn. Con. By. Co., 14Minu. 360 ; Wood’s Master and Servant, § 424.
Applying this test to the facts before us, leaving the rule in question out of view for the present, we do not think that the deceased and the railroad employees were fellow servants. He was not in the employ of the railroad company for any purpose. Both as express messenger and baggage agent he was the servant of' the express company. It hired him and paid him his compensation; it alone could dismiss him; and it was to its general control that he, was subject. The effect of the agreement between the two companies was that the express company, for a consideration, handled the baggage of the railroad company; and the deceased was simply its agent for that purpose. In caring for the baggage he was under the direction of the railroad company; but this qualified subjection to the latter company grew out of the agreement with the express company, and not out of any contract between him and the railroad company. The railroad company had no general control of him. It did not employ him, it did not pay him, it could not discharge him, and he was not responsible to it for the manner in which he performed his duties. If it desired his dismissal it must procure it through his employer, the express company. The deceased and the railroad men were therefore not servants of the same master or under the same general control. Rule 92 could not; *334 affect him unless he had knowledge of it. It may be conceded that the employees of the railroad company were presumed to know its rules; hut that presumption does not extend to persons not in its employ; and there is no evidence that the deceased knew or might have known of this rule. But we are unable to see that, even if he had known it, it would have affected his relations with that company in alteration of its liability in this action. Certain classes of persons, among them express messengers, are required by the rule to consider themselves employees of the defendant in all matters connected with the movement and government of trains; and must conform to the directions of the conductor thereof. If it can be said that this rule would place the persons named under the control-of the company, such control is limited and not general. It is not the same character or degree of control which a master exercises over his servants. The rule is perhaps proper for the purpose of insuring the safety of trains and of those upon them. Passengers are also subject to rules having the same purpose in view. But such a rule does not make the persons it specifies employees of the company in the sense that its paid servants are, so as to absolve it from liability for injuries received by those persons in consequence of the negligence of its regular employees. There is no definition of the term “fellow servants ” which includes persons doing business with a railroad company, who, temporarily, for the purposes of the safety of the train, are to consider themselves as employees; and if the deceased did not occupy the relation of fellow servant, then his rights were those of a passenger.
We are asked to say, as a matter of law, that the deceased was guilty of negligence contributing to his injuries, and that, therefore, a recoveiy is precluded. The only evidence of what the deceased did is contained in his own statements made shortly after the accident. He said that after the de-' tached portion of the train commenced to run away, he first thought it was going up hill; but upon looking out he saw it was going the other way. He then went upon the top of his car to see if any one was on the train, and unsuccessfully *335 tried to set the brakes. The train was going at the rate of four or five miles an hour. At that speed he might safely have left it, but he did not. He went back into the baggage car, and there remained until the wreck. As the train was going down hill, of course its speed was being constantly accelerated. What constitutes contributory negligence is somewhat dependent upon circumstances. A man, upon suddenly realizing that he is in peril, is liable not to be in the best frame of mind for cool and accurate calculation; and, while he is attempting to determine what action should be taken, it may be too late to act at all. Where practically instantaneous decision is demanded from a person dazed by danger, an error of judgment is not in law to be imputed to him as contributory negligence. Wharton on Negligence, § 304.
It is for the jury to determine, from the facts and circumstances shown in evidence, whether the conduct of a man so-situated amounts to contributory negligence or not.
The instructions given by the court fairly submitted all the questions in the case to the jury. The questions of the negligence of the defendant, of the contributory negligence of the deceased, of the relations sustained by him to the defendant, and of the measure of damages, were correctly presented. Certain instructions were requested by the defendant, the effect of which was to declare as a matter of law that the deceased and the defendant’s emploj^ees were fellow servants, and that no cause of action had been proven. These were properly refused. We are unable to discover any improper ruling in the admission or rejection of evidence. The record seems to be free from any error of which the defendant can complain, and the judgment must therefore be affirmed.
Affirmed.